UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RLJ PARTNERS, A PARTNERSHIP; LW ASSOCIATES, A SOLE PROPRIETORSHIP; JTW GROW SERVICES A SOLE PROPRIETORSHIP; OTIS FUND, A PARTNERSHIP; JOSHUA WEXLER; RACHEL WEXLER; ROSE WEXLER; AND JAMES LOURES, JR.; EACH DERIVATIVELY, AS SHAREHOLEDERS, ON BEHALF OF GROW SOLUTIONS HOLDINGS, INC. | Civil Action No.: |
| | **SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, WASTE OF COPORATE ASSETS AND CONSPIRACY DEMAND** |
|     Plaintiffs | |
|     vs. | |
| JEFFREY BEVERLY; HOWARD KARASIK; LESLIE BOCSKOR; WILLIAM HAYDE; PETER SEN LAU; GROW SOLUTIONS HOLDINGS, LLC; CECELIA SOH; JOSEPH LUCOSKY; LUCOSKY BOOKMAN; BUCKMAN BUCKMAN, & REID; NETWORK 1 FINANCIAL SECURITIES INC.; DOES 1-20 and ROW CORPORATIONS I-XX, inclusive, | |
|     Defendants | |
|     And | |
| GROW SOLUTIONS HOLDINGS, INC. Nominal Defendant | |

Plaintiffs, through their undersigned counsel and by way of Complaint against the above-named Defendants, says:

## JURISDICTION

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1331 as this case involves alleged violations of federal securities law by the defendants including: Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act and Rule10b-5 thereunder; and Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

2. Venue is appropriate in this Court as the Plaintiff's business has its offices located within this district and the majority of the Plaintiff's activities herein were conducted in this district.

## NATURE AND SUMMARY OF ACTION

3. This is a shareholder derivative action on behalf of nominal party Grow Solutions Holdings, Inc. ("GSH" or the "Company"), a Nevada Corporation and reporting issuer registered with the United States Securities and Exchange Commission (the "SEC").

4. GSH is listed and publicly trading on OTC Markets[1].

5. Specifically, GSH lists and trades on OCTPink[2].

6. The Defendants include the members of the GSH Board of Directors (the "Board"),

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

---

[1] OTC Markets Group, (previously known as "Pink Sheets") is an American financial market providing price and liquidity information for almost 10,000 over-the-counter (OTC) securities. The group has its headquarters in New York City. OTC-traded securities are organized into three markets to inform investors of opportunities and risks: OTCQX, OTCQB and Pink.

[2] "Pink" is an open market that has no financial standards or reporting requirements. The stock of companies in the Pink tier are not required to be registered with the SEC. Companies in this category are further categorized by the level and timeliness of information they provide to investors and may have current, limited, or no public disclosure.

namely, Peter Lau, Howard Karasik, Leslie Bocskor, William Hayde, and Jeffrey Beverly.

7. Mr. Beverly also serves as the Chief Executive Officer for GSH.

8. The Defendants as named herein, also include non-board members, individuals or entities tortuously colluding with the Board to the detriment of GSH and its shareholders and in so doing, unjustly enriching themselves. These individuals and entities as named herein include, Cecelia Soh, Danny Lau, Joseph Lucosky, the law firm of Lucosky Brookman, and the securities firms of Buckman, Buckman, & Reid and Network One Financial Securities.

9. This action arises from a litany of transgressions by the Board of Directors of GSH as primarily orchestrated by Defendants Jeffrey Beverly, Peter Lau and Joseph Lucosky.

10. In short, said conduct includes (A) multiple, repeated, violations of federal and state securities laws germane to the offer and sale of securities in private transactions and unlawful, undisclosed commissions or payoffs in relation thereto; and (B) the unlawful usurpation of those powers and rights afforded to common shareholders as promulgated by the Nevada's statutory framework for corporate governance and the articles and bylaws of GSH.

*Undisclosed Commissions and Pay-Offs*

11. In conjunction with no less than two private placements involving the offer and sale of securities, the Board approved and caused to be paid *surreptitious undisclosed* commissions and pay-offs to defendants or their shills or straw men including family members.

12. These unlawful commissions, and the absence of adequate disclosure of same to offerees, constitute no less than fraud in the offer or sale of securities in violation of Section 17(a) of the Securities Act.

13. The Board members, in the offer or sale of securities, employed devices, schemes, or artifices to defraud, obtained money or property by means of untrue statements or omissions, and engaged in transactions, practices, or courses of business which operated as a fraud or deceit, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

14. Said conduct further constitutes an act, practice, or course of business which operated as a fraud or deceit in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act and Rule l0b-5 thereunder. 16. Finally, as a further result of said conduct, GSH risks losing the right to avail itself of certain applicable exemptions from registration, and since no registration statement was in effect with the SEC as to such securities, and offerings, the Board thus violated Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

15. The Board and each member thereof, has therefore caused to be visited upon GSH and its shareholders, considerable harm and detriment.

16. Consequently, GSH now faces the tangible likelihood of regulatory inquiry and sanctions, from a host of various state regulatory authorities including for example, Nevada's Securities Division as well as the U.S. Securities and Exchange Commission ("SEC").

17. Worse still, the specter of formal referral to the U.S. Department of Justice ("DOJ") may result, in the absence of good-faith, expedient, remedial action undertaken by the Board.

18. Despite repeated inquiry by one or more common shareholders, the GSH Board, refuses to disclose substantive details relating to this conduct and its corporate governance and business practices.

19. Consequently, GSH shareholders have been kept in the dark about the precise nature and scope of the Company's exposure to regulatory sanction and private-party civil liability for the Board's transgressions and the blatant self-dealing undertaken by these defendants resulting in their unjust enrichment.

***(B) Usurpation of the Shareholders' Voting Franchise and their Rights.***

20. In response to at least two written (and multiple oral) demands for the inspection of books and records, and a call for shareholder meeting, the Board, facing the prospect of termination and replacement, conspired with legal counsel for GSH to disenfranchise GSH shareholders by rendering impotent their voting shares.

21. The Board did so by adopting a resolution and thereafter, filing an amendment to the Articles of Incorporation (the "Amendment") of GSH, with the Secretary of State of the state of Nevada, designating a new class of securities (referred to herein as ***Super Shares***) though formally referred to by the Board as "Series A Preferred Stock".

22. Each share of this *super* class of securities carries with it voting rights of *astronomical* weight or proportion in comparison to the voting rights of common shares as held by the shareholders left out of the scheme.

23. Thereafter, the Board brazenly issued themselves all of these Super Shares as authorized by their self-serving resolution and designation, through a newly minted entity, controlled equally by each member of the Board, namely, Defendant Grow Solutions Holdings, LLC.

24. With these Super Shares, the Board ensured its longevity by diluting common shareholders thus rendering their voting rights all but non-existent.

25. The Defendant Directors adopted certain class voting provisions accompanying the Series "A" Preferred for the specific purpose of preventing holders of a majority of GSH's common stock from electing a new board and otherwise impeding the Board's illicit and self serving conduct.

26. In filings before the Securities and Exchange Commission, the Board claims that the intent of this [scheme] was to establish a so-called "quorum" without further elaboration.

27. The Board set out to dilute the significant or major shareholders of GSH, including those Plaintiffs as named herein and gifted themselves a *de facto* veto over any action submitted to or by GSH stockholders.

28. They did so without any remotely plausible, legally justifiable rationale.

29. Underscoring their blatant disregard for bedrock principles of corporate governance and fiduciary obligations, they *gifted* themselves these Super Shares *without consideration or payment* to GSH.

30. Their sole objective was to preserve their power and authority as the incumbent board without limitation.

31. No legitimate corporate objective exists for said issuance.

32. Moreover, pursuant to certain provisions as promulgated by Nevada's Revised Statutes ("NRS") including but not limited to NRS 78.265, the Board was obliged to proffer existing shareholders including Plaintiffs, preemptive rights, that is, an opportunity to acquire these Super Shares upon the very same terms the Board so generously fixed for its members and a fair and reasonable opportunity to exercise such rights.

33. The Board failed to do so.

34. The Board and each member thereof, thus breached its/his/her tandem obligations of care and loyalty to GSH and its shareholders, in contravention of their fiduciary duties to same.

35. By this action, Plaintiffs seek damages and other relief against defendants to Compensate GSH.

## PARTIES

36. Plaintiff Joshua Wexler is the founder of Grow Solutions Holdings, LLC ("GSH") and its business. He is a shareholder of GSH and was so at the time of the continuing wrong(s) complained of and remains today a shareholder. Plaintiff owns approximately 5,400,000 GSH shares and has continuously held shares before, before, during and after the acts complained of herein were committed. Plaintiff is a resident of Colorado. Plaintiff Joshua Wexler also owns shares of GSH through an entity named (Plaintiff) JTW Grow Services.

37. JTW Grow Services is a New Jersey Sole Proprietorship solely owned and controlled by Plaintiff Joshua Wexler through which he owns 615,000 common shares of GSH.

38. Plaintiff Victor Wexler was a shareholder of GSH now and at the time the continuing wrong(s) complained of initiated. He remains a shareholder through Plaintiff Otis Fund. Plaintiff has continuously held shares through Otis Fund. Plaintiff is a resident of New Jersey.

39. Otis Fund is a New Jersey Partnership through which Plaintiff Victor Wexler owns approximately 750,0000 common shares of GSH.

40. Plaintiff Rachel Wexler was a shareholder of GSH at the time of the continuing wrong(s) complained of and remains a shareholder. Plaintiff Rachel Wexler is a resident of New Jersey.

41. RLJ Partners is a New Jersey Partnership through which Plaintiff Rachel Wexler owns common shares of GSH. Rachel Wexler is the sole partner.

42. LW Associates, A Sole Proprietorship; is a New Jersey Sole Proprietorship through which Plaintiff Leigh Wexler owns common shares of GSH.

43. Plaintiff Leigh Wexler was a shareholder of GSH at the time of the continuing wrong(s) complained of and remains a shareholder. Plaintiff owns approximately 2,200,000 GSH shares and has continuously held shares through LW Associates. Plaintiff Leigh Wexler is a resident of New Jersey.

44. Plaintiff Rose Wexler was a shareholder of GSH at the time of the continuing wrong complained of and remains a shareholder. Plaintiff Rose Wexler is a citizen of New Jersey is a resident of New Jersey.

45. Plaintiff James Loures, Jr. was a shareholder of GSH at the time of the continuing wrong complained of and remains a shareholder.  Plaintiff James Loures, Jr. is a citizen of New Jersey

46. Nominal party Grow Solutions Holdings, Inc. is an operating company with its operating headquarters located at 535 5th Avenue, 24th Floor. New York, New York. It also maintains an office at 50 West Liberty Street Ste 880, in Reno Nevada 89501 and  at times had several locations in Colorado and Florida.

47. GSH does most of its business in the United States in general, and is domiciled in Clark County, Nevada.

48. Its common stock is listed and traded over-the-counter here in the United States.

49. A majority of its top ten largest shareholders are individuals, resident in the United States, or business entities or organizations, formed and domiciled the United States.

50. GSH may be served via its Registered Agent: "Nevada Agency and Transfer Company" at 50 West Liberty Street Ste 880, Reno Nevada 89501.

51. Defendant Jeff Beverly ("Beverly") is an individual believed to be a resident of the State of Colorado. Beverly is, and was, at all relevant times, a Director of GSH as well as Chairman of the Board and President of GSH.

52. Beverly breached his fiduciary duties by orchestrating (together with each of the other Board Members and legal counsel to GSH, Joseph Lucosky) the Super Share scam, designed to usurp the voting franchise away from Common Shareholders. Said Defendant further breached his fiduciary duties to GSH and its shareholders by failing to oblige the preemptive rights mandate as dictated by NRS 78.265 and by gifting himself and his fellow board members with these Super Shares without adequate authorization and without tender of any consideration to GSH, thus engaging in brazen self-dealing to the detriment of the corporation and its shareholders.

53. Said Defendant also directly engaged in and or aided and abetted the conduct of fraudulent securities transactions and the willful disregard of the recordkeeping and internal controls provisions mandated by federal law and those applicable rules and regulations as promulgated by the SEC. Specifically said Defendant aided and abetted violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], in violation of Section 15(b) of the Securities Act [15 U.S.C. §77o(b)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

54. Moreover, said Defendant directly engaged in and or aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)], in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

55. Finally said Defendant directly engaged in and or aided and abetted violations of 13(b)(2)(a) and (b), and 15(d) of the Exchange Act (making and keeping books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and disposition of the issuer and its assets; and (B) devising and maintaining a sufficiently accurate and truthful system of internal accounting controls. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

56. Defendant Peter Sen Lau ("P. Lau") is an individual believed to be a resident of the State of New York. Mr. Lau is, and was, at all relevant times, a Director of GSH.

57. Concurrent to his employ or appointment with GSH as Board Member, Defendant Peter Lau is a shareholder or partner in a duly licensed broker/dealer business or enterprise, namely, (co-defendant) Buckman, Buckman & Reid, Inc ("BBR")

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

registered with FINRA and the Securities and Exchange Commission under CRD No: 23407.

58. Through BBR, Defendant P. Lau is a licensed registered representative or broker holding both Series 7 (General Securities Representative) and 63 (Uniform Securities Agent State Law) licenses.

59. His CRD number is 2302677 and he appears to be licensed as a securities agent or registered representative in New York, New Jersey, and Florida.

60. On Brokercheck (a website that publishes information about securities brokers) Defendant P. Lau has made reference to being a director of GSH.

61. Defendant Lau does not disclose his conduct germane to the offer and sales of securities as conducted by GSH and his role associated therewith; nor does he disclose his association with Grow Solutions Holdings, LLC.

62. Though Lau appears to be a registered representative at a duly licensed broker/dealer, said broker/dealer has never engaged in any offerings, sales or solicitations of any securities for GSH, nor, for that matter, has it ever provided any services for GSH.

63. Notwithstanding, one of its sales agents certainly did, namely Defendant Lau who solicited the offer and sale of securities for GSH as a director for the issuer in at least to separate, discrete private offerings purported to be exempt from registration.

64. Upon information and belief, in so doing, Mr. Lau violated SEC and FINRA rules by failing to disclose this activity to Buckman, Buckman & Reid.

65. Said Defendant breached his fiduciary duties to GSH by facilitating (together with each of the other Board Members and legal counsel to GSH, Joseph Lucosky) the Super Share scam, designed to usurp the voting franchise away from Common

Shareholders. Said Defendant further breached his fiduciary duties to GSH and its shareholders by failing to oblige the preemptive rights mandate as dictated by NRS 78.265 and by gifting himself and his fellow board members with these Super Shares without adequate authorization and without tender of any consideration to GSH, thus engaging in brazen self-dealing to the detriment of the corporation and its shareholders.

66. Said Defendant also directly engaged in and or aided and abetted the conduct of fraudulent securities transactions and the willful disregard of the recordkeeping and internal controls provisions mandated by federal law and those applicable rules and regulations as promulgated by the SEC. Specifically said Defendant aided and abetted violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

67. Moreover, said Defendant directly engaged in and or aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)], in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].  In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

68. Finally said Defendant directly engaged in and or aided and abetted violations of 13(b)(2)(a) and (b), and 15(d) of the Exchange Act (making and keeping books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and disposition of the issuer and its assets; and (B) devising and maintaining a sufficiently accurate and truthful system of internal accounting controls.

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

In so doing, Defendant Peter Lau breached his fiduciary duties to GSH and its shareholders.

69. Defendant Howard Karasik ("Karasik") is an individual believed to be a resident of the State of New York. Mr. Karasik is, and was, at all relevant times, a Director of GSH.

70. Said Defendant breached his fiduciary duties by facilitating (together with each of the other Board Members and legal counsel to GSH, Joseph Lucosky) the Super Share scam, designed to usurp the voting franchise away from Common Shareholders. Said Defendant further breached his fiduciary duties to GSH and its shareholders by failing to oblige the preemptive rights mandate as dictated by NRS 78.265 and by gifting himself and his fellow board members with these Super Shares without adequate authorization and without tender of any consideration to GSH, thus engaging in brazen self-dealing to the detriment of the corporation and its shareholders.

71. Said Defendant also directly engaged in and or aided and abetted the conduct of fraudulent securities transactions and the willful disregard of the recordkeeping and internal controls provisions mandated by federal law and those applicable rules and regulations as promulgated by the SEC. Specifically, said Defendant aided and abetted violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

72. Moreover, said Defendant directly engaged in and or aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)], in violation of Section 20(e) of the Exchange Act [15

U.S.C. § 78t(e)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

73. Finally said Defendant directly engaged in and or aided and abetted violations of 13(b)(2)(a) and (b), and 15(d) of the Exchange Act (making and keeping books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and disposition of the issuer and its assets; and (B) devising and maintaining a sufficiently accurate and truthful system of internal accounting controls. In so doing, Defendant Karasik breached his fiduciary duties to GSH and its shareholders.

74. Defendant Leslie Bocskor ("Bocskor") is an individual believed to be a resident of the State of Nevada. Mr. Bocskor is, and was, at all relevant times, a Director of GSH.

75. Said Defendant breached his fiduciary duties by facilitating (together with each of the other Board Members and legal counsel to GSH, Joseph Lucosky) the Super Share scam, designed to usurp the voting franchise away from Common Shareholders. Said Defendant further breached his fiduciary duties to GSH and its shareholders by failing to oblige the preemptive rights mandate as dictated by NRS 78.265 and by gifting himself and his fellow board members with these Super Shares without adequate authorization and without tender of any consideration to GSH, thus engaging in brazen self-dealing to the detriment of the corporation and its shareholders.

76. Said Defendant also directly engaged in and or aided and abetted the conduct of fraudulent securities transactions and the willful disregard of the recordkeeping and internal controls provisions mandated by federal law and those applicable rules and regulations as promulgated by the SEC. Specifically, said Defendant aided and abetted

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

77. Moreover, said Defendant directly engaged in and or aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)], in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

78. Finally said Defendant directly engaged in and or aided and abetted violations of 13(b)(2)(a) and (b), and 15(d) of the Exchange Act (making and keeping books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and disposition of the issuer and its assets; and (B) devising and maintaining a sufficiently accurate and truthful system of internal accounting controls. In so doing, Defendant Bocskor breached his fiduciary duties to GSH and its shareholders.

79. Defendant William Hayde ("Hayde") is an individual believed to be a resident of the State of New York. Mr. Hayde is, and was, at all relevant times, a Director of GSH.

80. Concurrent to his employ or appointment with GSH as Board Member, Defendant Hayde is associate with Network 1, a duly licensed broker/dealer business or enterprise, namely, (co-defendant) Network 1 Financial Securities Inc. ("Network 1") registered with FINRA and the Securities and Exchange Commission under CRD No: 13577.

81. Through BBR, Defendant Hayde is a licensed registered representative or broker holding both Series 7 (General Securities Representative) and 63 (Uniform Securities Agent State Law) licenses. His CRD Number is 723867.

82. His CRD number is 2302677 and he appears to be licensed as a securities agent or registered representative in New York, New Jersey, and Florida.

83. Mr. Hayde's licensed activity includes:

   a. Direct Participation Programs

   b.  General Securities Principal

   c. General Securities Representative Invest Co and Variable Contracts Investment Banking Representative Securities Trader.

84. On Brokercheck (a website that publishes information about securities brokers) Defendant Hayde has made reference to being a director of GSH.

85. Notably, the text above, emphasized in boldface and underscored, appears to be a reference to his role as a director with GSH.

86. Defendant Hayde does not disclose his conduct germane to the offer and sales of securities as conducted by GSH and his role associated therewith; nor does he disclose his association with Grow Solutions Holdings, LLC.

87. Though Hayde appears to be a registered representative at a duly licensed broker/dealer, said broker/dealer has never engaged in any offerings, sales or solicitations of any securities for GSH, nor, for that matter, has it ever provided any services for GSH.

88. Notwithstanding, one of its sales agents certainly did, namely Defendant Hayde who facilitated or otherwise solicited the offer and sale of securities for GSH as a director

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

for the issuer in at least to separate, discrete private offerings purported to be exempt from registration.

89. Upon information and belief, in so doing, Mr. Hayde violated SEC and FINRA rules by failing to disclose this activity to Buckman, Buckman & Reid.

90. Said Defendant breached his fiduciary duties by facilitating (together with each of the other Board Members and legal counsel to GSH, Joseph Lucosky) the Super Share scam, designed to usurp the voting franchise away from Common Shareholders. Said Defendant further breached his fiduciary duties to GSH and its shareholders by failing to oblige the preemptive rights mandate as dictated by NRS 78.265 and by gifting himself and his fellow board members with these Super Shares without adequate authorization and without tender of any consideration to GSH, thus engaging in brazen self-dealing to the detriment of the corporation and its shareholders.

91. Said Defendant also directly engaged in and or aided and abetted the conduct of fraudulent securities transactions and the willful disregard of the recordkeeping and internal controls provisions mandated by federal law and those applicable rules and regulations as promulgated by the SEC. Specifically, said Defendant aided and abetted violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

92. Moreover, said Defendant directly engaged in and/or aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)], in violation of Section 20(e) of the Exchange Act [15

U.S.C. § 78t(e)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

93. Finally said Defendant directly engaged in and/or aided and abetted violations of 13(b)(2)(a) and (b), and 15(d) of the Exchange Act (making and keeping books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and disposition of the issuer and its assets; and (B) devising and maintaining a sufficiently accurate and truthful system of internal accounting controls. In so doing, Defendant Hayde breached his fiduciary duties to GSH and its shareholders.

94. Defendant Cecelia Soh ("Soh") is an individual believed to be a resident of the State of New York. Ms. Soh is believed to be the spouse of Defendant Peter Lau. Said Defendant conspired with Defendant Peter Lau and the rest of the Board to facilitate the payment of a commission to her husband (Defendant Lau) in the form of common stock of GSH. Rather than issue these shares outright to Peter Lau, Defendants Soh and Lau together with the rest of the Board concocted a scheme to issue these extras shares to Defendant Soh, as payment to Peter Lau for his solicitation and sales efforts in the offer and sale of securities pursuant to a private placement conducted by the Board to raise capital for GSH.

95. The Board and Mr. Lau conspired to compensate Mr. Lau for his sales and solicitation efforts by issuing him one share of common stock of GSH for every dollar of capital he helped raise. Knowing he could not be compensated for this activity without losing the exemption from registration they intended to rely upon, and risking regulatory

sanction, the Board, together with Peter Lau and his wife, (Defendant Soh) concocted a ruse by which Defendant Soh would purchase shares in the very same offering.

96. BUT; instead of receiving the number of shares every other shareholder received under the very same terms and conditions as those prospective or participating shareholders, the Board issued Soh a premium in the form of additional shares intended for her husband Peter, reflecting the commission or compensation they devised in contravention of the express prohibitions against commissions paid to officers and directors in the conduct of such offerings by such issuers.

97. Defendants did so by fabricating a consulting agreement whereby Ms. Soh was to perform vague unspecified services for GSH when in fact she provided no services whatsoever.

98. In so doing, the Board defrauded any other participants in said offering who were not told of the discounted offering being conducted at the very same time, nor were they informed of the fact that such a commission would be paid.

99. Ultimately, for every dollar directly or indirectly raised and attributed to Peter Lau's solicitation and sales efforts, his wife, Defendant Soh, received an extra share of common stock of GSH without paying for same. In so doing, said Defendant Soh aided and abetted the violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]. Moreover, as a result of this scheme, she has harmed GSH and has been unjustly enriched, to the detriment of GSH and its shareholders.

100.     This scheme presents GSH and its shareholders with considerable risk. In essence, Defendants Lau and Soh collectively acted as unregistered, undisclosed brokers receiving undisclosed compensation in conjunction with the sale and solicitation of securities on behalf of GSH. The resulting injury to GSH likely to result given any regulatory scrutiny would include any or all of the following:

    a.   Regulatory sanctions for employing an unregistered undisclosed broker or for aiding and abetting the violation of federal/state law by the unregistered broker, including administrative fines, inability to rely on certain securities registration exemptions, and criminal penalties.

    b.   10b-5 securities fraud liability to investors and sanctions by regulators for failure to disclose use of an unregistered broker.

    c.   Rescission claims by investors demanding return of invested funds plus statutory interest and attorney fees.

    d.   Loss of the securities registration exemption.

    e.   Unavailability of legal opinions on legality of the issuer's stock.

    f.   Loss of institutional investors' interest in any subsequent offering.

    g.   Misleading SEC filings and Tainted financial statements in mischaracterizing the true nature of the transactions.

101.     Defendant Joseph Lucosky ("Lucosky") is an individual believed to be a resident of the State of New Jersey.

102.     Defendant Lucosky is the founding and managing partner of Lucosky Brookman LLP, a law firm believed to be duly licensed in New York and New Jersey.

103.    Defendant Lucosky by and through his firm, Lucosky Brookman LLP, was, at all times germane to these claims, retained by GSH as corporate counsel, charged with advocating for and of behalf of GSH a by it extension, its shareholders in the collective, aggregate sense.

104.    Lucosky was and is believed to still be, the senior attorney at Lucowsky Brookman, charged with representing GSH.

105.    On its website, the law firm of Lucosky Brookman boasts of Lucosky's rather impressive credentials.

106.    Without doubt, Defendant Lucosky purports to be intimately familiar with those laws, rules and regulations giving rise to the claims as made herein.

107.    As legal counsel retained by GSH, Lucosky certainly owed a fiduciary duty to GSH and by extension, its shareholders in the aggregate.

108.    Regrettably, Defendant Lucosky breached his fiduciary duties by personally crafting (upon information and belief) and certainly facilitating (together with each of the Board Members of GSH) the Super Share scam, designed to usurp the voting franchise away from Common Shareholders.

109.    Lucosky further breached his fiduciary duties to GSH and its shareholders by failing to advise and counsel the Board of its duty to oblige the preemptive rights mandate as dictated by NRS 78.265 and compelling the Board to seek shareholder authorization for the issuance of the sham shares and further, advising same of the fatal consequences of failing to tender any consideration in exchange for this astounding windfall of impervious voting power the Board simply gifted itself over the fate and destiny of GSH.

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

110.    Rather than exercising the utmost care in advising and counseling the Board against this ill-conceived plot to usurp control, Lucosky, (upon information and belief) actually devised of the plan and encouraged the brazen self-dealing to the detriment of his client, name GSH, the corporation and its shareholders.

111.    Said Defendant as legal counsel to GSH overseeing its SEC filings, also directly engaged in and or otherwise aided and abetted the conduct of fraudulent securities transactions and the willful disregard of the recordkeeping and internal controls provisions mandated by federal law and those applicable rules and regulations as promulgated by the SEC. Specifically said Defendant aided and abetted violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], in violation of Section 15(b) of the Securities Act [15 U.S.C. §77o(b)]. In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

112.    Moreover, said Defendant directly engaged in and or aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)], in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

113.    In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

114.    Finally said Defendant directly engaged in and or aided and abetted violations of 13(b)(2)(a) and (b), and 15(d) of the Exchange Act (making and keeping books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and disposition of the issuer and its assets; and (B) devising and

maintaining a sufficiently accurate and truthful system of internal accounting controls.

In so doing, said Defendant breached his fiduciary duties to GSH and its shareholders.

115. At a minimum, Defendant Lucosky turned a blind eye as to these violations and in so doing breached his fiduciary duties to his client, GSH and its shareholders.

116. Defendant Joseph Lucosky ("Lucosky") is an individual believed to be a resident of the State of New Jersey.

117. Defendant Lucosky is the founding and managing partner of Lucosky Brookman LLP, a law firm believed to be duly licensed in New York and New Jersey.

118. Defendant Lucosky Brookman LLP, (Lucosky Brookman) in its capacity as a law firm, was, at all times germane to these claims, retained by GSH and provided GSH with corporate and securities related legal counsel specifically related to the actions as complained of herein.

119. The principal attorney at Lucosky Brookman, charged with overseeing this engagement was and (upon information and belief) still is, Defendant Joe Lucosky.

120. Lucosky Brookman owed a fiduciary duty to GSH and by extension, its shareholders in the aggregate.

121. Lucosky Brookman breached its fiduciary duties to GSH by failing to supervise and oversee or otherwise allowing Defendant Lucosky to fail in the exercise of due care and observe the fiduciary duties owed to GSH.

122. Most certainly, Defendant Lucosky Brookman turned a blind eye as to these violations and failed to adopt or implement reasonably sufficient policies, procedures and protocols so as to prevent what is tantamount to an abject dereliction of duty if not (as Plaintiffs suspect upon information and belief) overt, willful malfeasance and

misconduct. In so doing the law firm of Lucosky Brookman breached its fiduciary duties to its client, GSH.

123.    Defendant Network 1 Financial Securities Inc. is a New Jersey Corporation and broker/dealer with which Defendant Hayde is associated. Its negligent supervision of Defendant Hayde contributed to the harm caused to GSH

124.    Defendant Buckman Buckman, & Reid is a New Jersey Corporation and broker/dealer with which Defendant Peter Lau is associated. Its negligent supervision of Defendant Hayde contributed to the harm caused to GSH.

125.    Each of the fictitiously named defendants sued herein as DOES 1 through 20, inclusive, and ROE Entities I-XX inclusive, is intended to represent as of yet unknown parties, individual or entities in some manner responsible and legally liable for the events, actions, and circumstances alleged in this Complaint and is liable to Plaintiffs for the damages and other relief to which Plaintiffs are entitled. These fictitiously named defendants are the officers, directors, controlling shareholders, other members of management, employees and/or consultants of one or more of the other Defendants who were involved in the wrongdoing detailed herein. These defendants aided and abetted and/or conspired with the named defendants in the wrongful acts and course of conduct or otherwise caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences and events alleged in this Complaint.

126.    Plaintiffs are informed and believe, and on such information and belief allege, that at all times herein mentioned, each defendant was the agent of each and every other defendant, and in doing the things alleged herein, was acting in the course and scope

of its/his agency and/or employment and was acting with the consent, permission and/or authorization of each and every remaining defendant. The acts and conduct of each defendant herein were ratified and approved by every remaining defendant.

**THE FIDUCIARY DUTIES OF GSH DIRECTORS, OFFICERS AND LEGAL COUNSEL.**

127.    As directors and officers of GSH, defendants owed fiduciary duties of candor, good faith and loyalty to the Company and its shareholders. They are prohibited from engaging in self-dealing as well as any other unlawful, corporate conduct, including but not limited to violations of the laws, rules and regulations applicable to GSH and its corporate governance protocols as dictated by Chapter 78 of the Nevada Revised Statutes9. and its articles and bylaws. Likewise, they are charged with dutifully obliging federal law and the rules and regulations as promulgated by the Securities and Exchange Commission with respect to publicly traded or listed issuers reporting with the Commission. Most certainly, willful intentional misconduct constituting fraud and other malfeasance constitutes an express abdication of these fiduciary duties.

128.    Because of their positions of control and authority as directors and/or officers of GSH, The Director-Defendants named herein exercised and continue to exercise control over the wrongful acts complained of herein.

129.    Given their executive and directorial positions with GSH, each of the Director-Defendants (and Defendants Lucosky and Lucosky Brookman as legal counsel with their respective fiduciary duties arising from the attorney client relationship) had access to information concerning the Company's business and operations in the conduct of the offer, sale and distribution of securities issued by GSH.

130.    The stringent, oversight and aggressive enforcement posture taken by regulatory authorities (state and federal) as to microcap or penny stock issuers (coupled with the inherent nature of what are often fatal sanctions for many smaller, struggling companies) result(s) in significantly greater risk and likely detriment for issuers in these circumstances.

**131.**    Consequently, the directors and officers (together with legal counsel) had a fiduciary duty to install and administer corporate governance compliance measures with controls and protocols sufficient to identify and deter and ultimately prevent and preclude from possibility the conduct described herein.

## FACTUAL ALLEGATIONS

132.    GSH (Grow Solutions Holdings, Inc.) (formerly known as LightTouch Vein & Laser, Inc. and before that, Strachan, Inc.) is a corporation formed under the laws of the State of Nevada. on May 1, 1981.

133.    On April 28, 2015, the Company ("Parent") having previously changed its name to Lightouch Vein and Laser, Inc. entered into an Acquisition Agreement and Plan of Merger ("the Merger") with (1) Grow Solutions, Inc., a Delaware corporation ("Grow Solutions Delaware") and (2) an intermediary acquisition entity formed expressly for such a merger and wholly owned by Parent as a subsidiary.

134.    Grow Solutions, Inc. was founded by Joshua Wexler and funded principally by the Wexlers, their friends and family.

135.    Under the terms of the merger, the Wexlers' business, Grow Solutions Delaware merged with the acquisition subsidiary and thus became a wholly owned subsidiary of Parent.

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

136.    The Wexler's Grow Solutions business became the primary focus of Parent's business and it assumed control of the management of the Parent as the former directors and control persons of Parent resigned. Parent discontinued its pre-Merger business.

137.    The Merger was accounted for as a "reverse merger," and Grow Solutions, was deemed to be the accounting acquirer in the reverse merger.

138.    Subsequent to this merger, Parent then changed its name as a Nevada corporation to the current name Grow Solutions, Holdings, Inc. ("GSH").

139.    The focus of the GSH business has or had been the provision of indoor and outdoor gardening supplies to the rapidly growing garden industry but as cannabis laws, rules and regulations evolve locally, statewide, and federal, GSH seeks to position itself as comprehensive service provider within the legal cannabis industry, servicing others growing, processing and dispensing legal cannabis and legal cannabis infused products subject to applicable law.

140.    The Company planned to operate multiple verticals within the legal cannabis industry, consisting of but not limited to (i) financing, (ii) sales of unregulated products through retail agricultural grow stores, (iii) distribution of unregulated products, equipment and supplies to agricultural grow stores, (iv) management and consulting services, (v) real estate, (vi) licensing, and (vii) rights to proprietary, unregulated products.

141.    Plaintiff Joshua Wexler founded the business underlying GSH. He had always been the driving force behind the growth of the enterprise before the merger and after. Early on, Joshua consistently secured funding for GSH based on his integrity and

reputation in this fledgling industry (cannabis cultivation and related products). Before

the current board was appointed, the management of GSH consisted of Plaintiffs

Victor and Joshua Wexler (father and son) and an individual named John Phelps who

served as CEO. Phelps was chosen by a plurality of the shareholders for this role given

his prudence and business acumen. Rachel Wexler served as corporate secretary.

142.    Just before the merger resulting in GSH succeeding to publicly listing SEC

reporting obligations, GSH and Joshua sought to acquire related businesses as part of a

growth by acquisition strategy they had adopted. Joshua courted two such acquisition

targets, SToK a company selling cannabis related products including pen vaporizers

and One Love Garden Supply in Boulder, Colorado. Plaintiff Victor Wexler flew out

to meet with SToK and as consequence, ultimately met Defendant Beverly whose

employ and association with SToK had recently terminated. Defendant Beverly

convinced the shareholders not to acquire SToK. Instead he suggested that GSH hire

him and that he could replicate SToK's business line for GSH directly.

143.    Defendant Beverly claimed to have access to a team of sales representatives,

Defendant Beverly, a former attorney, touted his experience and expertise in the

cannabis industry.

144.    Ultimately the shareholders and GSH hired Defendant Beverly.

145.    Regrettably the CEO of GSH died soon thereafter and the significant shareholders,

appointed Defendant Beverly as President of GSH.

146.    Joshua Wexler filled in as head of product development given that Beverly has

assumed the role of President.

147.   Effective May 13, 2015 (the "Closing Date"), the Company entered into an

Acquisition Agreement and Plan of Merger (the "OneLove Agreement') with Grow

Solutions Acquisition LLC, a Colorado limited liability company and a wholly owned

subsidiary of the Company ("Grow Solutions Acquisition"), One Love Garden Supply

LLC, a Colorado limited liability company ("OneLove"), and all of the members of

OneLove (the "Members").

148.   On the Closing Date, OneLove merged with Grow Solutions Acquisition and

became a wholly owned subsidiary of the Company.

149.   Following the Closing Date, OneLove's business was acquired by the Company.

150.   The Company's management assumed control of the management of OneLove

with the former managing members of OneLove resigning from OneLove upon closing

of the OneLove Agreement.

151.   GSH paid the expenses for Defendant Beverly's relocation from Florida to

Colorado at Beverly's request. Subsequently Joshua Wexler, in furtherance of

pursuing GSH's growth through acquisition strategy, pursued another target, HyGrow

which operated two garden supply stores in Denver and Pueblo, Colorado.

152.   But soon after GSH's acquisition of Hygrow, the shareholders began to question

Defendant Beverly's performance and his apparent lack of leadership. And managerial

skills.

153.   Still, GSH continued to expand and GSH acquired yet another operating company,

Hydro Warehouse (an online garden supply store).

154.   With all this expansion, the bookkeeper at GSH (formerly the bookkeeper at

OneLove) could not continue to manage the books and accounts for the company

given the resources at hand. She could not timely produce accounting reports as needed by management.

155.   Some of the significant shareholders (including Rachel and Josh Wexler) expressed this concern to Defendant Beverly. Notwithstanding, Beverly took no substantive action.

156.   Yet still no action was taken. Rachel also alerted Jeff Beverly, Brian Speck, Victor and Josh to the accounting problems in our Product Division.

157.   Some of the significant shareholders also suggested to Beverly that he take a more hands-on approach and regularly visit the multiple stores as operated by GSH in Denver and Pueblo.

158.   Beverly rarely did so.

159.   Despite the passing of nine months or more, the bookkeeping issue continued to fester, detrimentally effecting the timeliness and accuracy of the accounting reports. Some of the significant shareholders continued to urge Defendant Beverly to take action, suggesting he replace the current bookkeeper with a more sophisticated team capable of handling the work.

160.   Moreover additional, critical personnel issues ensued mandating the termination of one of the sales reps. Beverly ultimately concurred that said rep consistently failed to perform as expected and that termination was necessary.

161.   Notwithstanding Beverly failed to or refused to fire said representative as he had befriended this individual and felt uncomfortable doing so.

162.   Only after considerable cajoling and chastising, did Beverly ultimately perform his duties and terminated this employee.

163.    Inexplicably Beverly decided to replace a critical, reliable supplier for an untested, unknown new supplier without testing this new supplier first and without consulting with other team members including significant shareholders employed by the Company.

164.    Beverly cut off the company's relationship with this tried and true supplier and engaged in a bulk order of $32,000.00 of product from the new supplier which delivered substandard unacceptable product, worthless and unsellable. This new supplier, located in China left Beverly with no contact information.

165.    Beverly failed to undertake any reasonable inquiry and failed to conduct any due diligence on the new supplier.

166.    To top things off, the sales rep Beverly was so reluctant to fire, stole approximately $20,000 of merchandise or inventory from the company whilst departing under Beverly's watch and now refuses to return company assets.

167.    What's more, despite Beverly's claims that he could nurture and cultivate product lines and a sales force, during his tenure thus far at GSH, he has abjectly failed to do so.

168.    Yet another instance of flagrant mismanagement clearly tips the scales in favor of a significant change in management. A disgruntled employee quit GSH and on his way out, managed to hijack or usurp out from under the Company, it online sales domain and business.

169.    Defendant Beverly, the Senior officer and President of GSH charge with managing the entire operation, failed to safeguard and secure the online store's pass codes allowing control of the website to be hijacked.

170.     Finally, of paramount concern to most of the Some of the significant shareholders is the fact, that it had become increasingly clear that GSH would not be able to timely file its annual report (10-K) as mandated by the Securities and Exchange Commission. This is due directly to the persistent failure of Defendant Beverly and the Board to address the woefully inadequate bookkeeping functions and personnel at GSH.

171.     These Plaintiffs were so concerned about the prospect of an untimely 10-K that the asked the company's CFO to fly to Denver a few weeks earlier to assist and ensure the accounting would be complete without discrepancy for handoff to the auditor(s).

172.     David Briones the CFO for GSH sent his colleague, Brian Speck out for a week to work with the bookkeeper who had found herself in over her head. By mid-January of 2017 there was still time to hire on temporary accountants or bookkeepers to manage the reports given that the GSH bookkeeper could not.

173.     Some of the significant shareholders arranged for an all-hands senior staff meeting so as to underscore how critical a timely filing of the 10 K was to the immediate and future prospects of the Company.

174.     Victor Wexler explained that a late filing would likely materially damage the company and that any hint or inkling of a problem with the books and records should be reported immediately.

175.     Everyone agreed. Jeff, Vic and Josh had another meeting where Vic told Jeff he has to be on top of this daily. He told Jeff he could not sit in his Denver's office not visiting the stores and assume the work was getting done. Jeff agreed. Vic Jeff and Bryan had a meeting to make sure Bryan would communicate any problems

immediately. The urgency of the timely filing of the 10 K could not have been

expressed more clearly.

176.    Despite multiple assurances made by Beverly to the significant shareholders that

the bookkeeping would be completed in time for the audit and filing, in the final

instance, indeed even as of the date of this filing, the 10-K has not been filed.

177.    Most disturbing, Defendant Beverly expressly represented to the Wexlers that the

bookkeeper had completed those accounting reports and schedules requisite the audit

for the 10-K. Subsequently though the Wexlers learned that in fact, none of those

reports had been completed and that Defendant Beverly knew or certainly should have

known this. Defendant Beverly recklessly misrepresented the circumstances and status

of the company's books and records leading up to the audit and annual report, or he

outright lied.

178.    The significant or major shareholders, were then inclined to recruit a seasoned

CEO to facilitate senior management of the GSH, though, they were amenable to

allowing Beverly to stay on.

179.    Moreover, these same shareholders believed that a Shareholder meeting was

essential.

180.    Given the urgency of timely filing, some of the significant shareholders pressed for

an emergency board meeting and the opportunity to present the issue to the Board.

181.    One of the Board Members, (Howard Karasik) agreed to oblige these shareholders

and called for a board meeting for purposes of specifically addressing the 10-K

debacle.

182.   Subsequently Victor Wexler sent a written request to address the board at a
meeting and further discussions regarding how might the company rectify the problem
such that it might avoid untimely filing in the future.

183.   Despite this, the Board does not respond, refusing even the courtesy of
acknowledging Victor's request.

184.   Joshua Wexler too, requested that he be allowed to address the board so as to
express his concerns. The Board refused to acknowledge his request too.

185.   Notwithstanding, on or about May 25, 2017, the Board did in fact a conduct a
board meeting but without informing the Wexlers. (The Wexlers are not board
members.)

186.   It is apparent from subsequent SEC filings describing resolutions passed at that
meeting that the Board members did not share the same objectives as those expressed
by the Wexlers.

***The Super Shares***

187.   In a Form 8-K filed with the SEC, the Board reports or discloses the creation and
issuance of the Super Shares as follows:

On June 7, 2017, the Company filed an amendment to its Articles of Incorporation (the
"Amendment") with the Secretary of State of the State of Nevada, which, among other
things, established the designation, powers, rights, privileges, preferences and
restrictions of the Series A Preferred Stock, $0.001 par value per share (the "Series A
Preferred Stock").

Among other provisions, each one (1) share of the Series A Preferred Stock shall have
voting rights equal to (x) 0.019607 *multiplied by* the total issued and
outstanding shares of common stock of the Company eligible to vote at the time
of the respective vote (the "Numerator"), *divided by* (y) 0.49, *minus* (z) the
Nummerator. For purposes of illustration only, if the total issued and outstanding
shares of common stock of the Company eligible to vote at the time of the respective
vote is 5,000,000, the voting rights of one share of the Series A

Preferred Stock shall be equal to 102,036 (0.019607 x 5,000,000) / 0.49) – (0.019607 x 5,000,000) = 102,036).

Fifty-one (51) shares of Series A Preferred Stock were authorized and fifty-one (51) shares of *Series A Preferred Stock were issued to Grow Solutions Holdings, LLC, a Colorado limited liability company (the "LLC") controlled equally by each member of the Board of Directors of the Company* (the "Board").

The Series A Preferred Stock has no dividend rights, no liquidation rights and no redemption rights, and *was created primarily to be able to obtain a quorum and conduct business at shareholder meetings*. All shares of the Series A Preferred Stock *shall rank (i) senior to the Company's common stock and any other class or series of capital stock of the Company hereafter created*, (ii) *pari passu* with any class or series of capital stock of the Company hereafter created and specifically ranking, by its terms, on par with the Series A Preferred Stock and (iii) junior to any class or series of capital stock of the Company hereafter created specifically ranking, by its terms, senior to the Series A Preferred Stock, in each case as to distribution of assets upon liquidation, dissolution or winding up of the Company, whether voluntary or involuntary.

Additionally, all of the issued and outstanding shares of Series A Preferred Stock will be forfeited and canceled by the LLC upon the earlier of (i) the Company closing a financing transaction whereby it receives an investment in an amount equal to at least $3,000,000, or (ii) twenty four (24) months from the filing date of the Amendment in the State of Nevada (the "Holding Period"), *unless such Holding Period is extended by a majority vote of the Board.*

The foregoing descriptions of the Amendment and the Series A Preferred Stock designations do not purport to be complete and are subject to, and qualified in its entirety by, the Amendment.

188.    None of the Defendant Board Members appear to have lodged a dissent, formal or otherwise. Each of the board members received his prorate portion of this windfall or considerable benefit in the absence of any consideration paid to GSH.

189.    This brazen act effectively eviscerates the stockholder franchise, rendering shareholders voting rights, on any matters, inconsequential, impotent.

190.     This action by the Board took place in the absence of any previous or

contemporaneous circumstances amounting to a change of control of the Company.

191.     Quite plainly, no change of control had taken place, nor was there then, nor is there

now, any looming, pending or threatened exchange or change of any "controlling

interest" in the corporation, on the horizon.

192.     Given this, the Board could not (nor can they presently) rely upon the provisions of

NRS 78.378 and 379.

193.     Notwithstanding, the Board lacks any remotely reasonable grounds to believe that

any threat to corporate policy and effectiveness existed at the time they undertook this

ill-conceived scheme to usurp from current and existing shareholders, (indeed

founding shareholders at that) the foundational voting rights of GSH common

shareholders.

194.     The Board members have abrogated these fundamental rights as conferred by the

laws of the State Nevada.

195.     This conduct cannot stand the scrutiny of Nevada's corporate governance

standards.

196.     In and about July/August of 2016 The Board of GSH undertook an offer and sale

of securities they claimed was exempt from registration.

197.     Selling "Secured Convertible Redeemable Debentures", the Board Members each

solicited individuals to invest and compensated one or more individuals not otherwise

associated with the Company to solicit prospective investors on their behalf.

198.     Said individuals were not registered or duly licensed as broker/dealer/agents with

FINRA and/or the SEC and relevant State regulatory authorities.

199. Said individuals included, Peter Lau's wife, Defendant Soh.

200. These Debentures had an effective maturity date of two (2) years subsequent to the effective date at purported to carry an interest rate of twelve (12) percent.

201. The Board enjoyed the right to redeem the Debentures prior to the maturity date and could do so by Redemption Notice in which case the holder of the Debenture had 10 days to agree to repayment convert said debenture into common stock of GSH.

202. Specifically, the terms as described in the Debenture Instrument are as follows:

   a. Upon receipt of the Redemption Notice, the Holder shall have ten (10) business days to convert all or any portion of the outstanding principal, accrued and unpaid interest, and any other sums due and payable hereunder (such total amount, the "Conversion Amount") into shares of Common Stock of the Company (the "Conversion Shares") in an amount of shares equal to: (i) the Conversion Amount (the numerator); *divided by* (ii) $0.80, which price shall be indicated in the conversion notice (in the form attached hereto as Exhibit B, the "Conversion Notice") (the denominator) (the "Conversion Price"). The Buyer shall submit a Conversion Notice indicating the Conversion Amount, the number of Conversion Shares issuable upon such conversion, and where the Conversion Shares should be delivered.

   b. b) Section 1.03 Redemption Premium. As additional consideration of the principal advance made by the Holder to the Company pursuant hereto, in the event that any portion of the obligations owing hereunder are repaid or pre-paid by the Company in cash, the Company shall promptly issue to the Holder a Common Stock purchase warrant (in the Form attached hereto as Exhibit A. the "Warrant") permitting the Holder to purchase that number of shares of the Company's Common Stock equal to sixty percent (60%) of the cash amount being repaid or pre-paid by the Company at such time, at an exercise price of One Dollar and Twenty Cents (US$1.20) per share. No amounts converted into shares of the Company's common stock shall be eligible for the issuance of a Warrant pursuant to this Section.

203. Peter Lau and his wife participated in said offering, investing $50,000.00 along with other investors.

204.    In and about September of 2016, the Board conducted yet another offering of

securities. This time, they sold "units" described in the preamble to the subscription

agreement utilized for the offering as follows:

> WHEREAS, the Company desires to sell and the Subscriber desires to
> purchase **Units** (as defined herein) of the Company, at a price per Unit equal to
> **$0.45,** each Unit shall be **comprised of (i) one share of common stock,
> $0,001 par value per share (the "Common Stock") and (ii) one warrant to
> purchase one share of Common Slock at an exercise price of $0.80 per
> share**, each Warrant expiring three years from the date of issuance and callable
> by the Company upon the Company's Common Stock trading on the OTC
> Markets OTCQB or other quotation service or exchange at a price greater than
> $1.00 for twenty (20) consecutive trading days (the "Warrants" and collectively
> with the Common Stock, the "Units".

205.    Again, as to the sale of these units, just like the sale of debentures, the Board

purported to rely on one or more exemptions from registration afforded to issuers by

the rules and regulations as promulgated by state and federal law.

206.    Said reliance was ill-founded.

207.    In each case, the Debenture Offering and the Units Offering, Defendants Lau and

Soh, together with the Board, concocted a surreptitious ruse to line their pockets with

additional shares or compensation, at the expense of unwitting subscribers who were

not made aware of the fact that commissions were paid for the sale and solicitation

efforts giving rise to their subscriptions and participation.

208.    The Board, Lau, and Soh agreed that for every dollar raised by Lau and Soh, they

would receive one share of common stock of GSH.

209.    They concealed this ruse by fabricating a so-called consulting engagement,

whereby Defendant Soh would provide "consulting services" to GSH.

210.    These services were illusory or non-existent; a pretext for disguising the undisclosed compensation to Lau and Soh for soliciting and selling securities.

211.    The services, Soh was to provide the Company appear to be one form or another of the following generalized, illusory obscurity:

> The consultant will consult with the officers and employees of the company concerning matters relating to the management and organization of the company, their financial policies, the terms and conditions of employment, and generally any matter arising out of the business affairs of the company.

212.    In fact, Defendant Soh provided no such services; nor for that matter did the Board expect her to.

**DAMAGE TO GSH**

213.    GSH has been, and will continue to be, severely damaged and injured by defendants' misconduct. For example, the Company has already incurred costs and expenses in connection with the precarious nature of preparing and filing an annual report (the 10-K) in a manner consistent with the full, fair and truthful standards as mandated by law.

214.    GSH faces the looming prospect of pecuniary losses and penalties that the Company will likely have to pay to resolve any civil sanctions or criminal charges that may arise from its non-compliance with securities laws.

215.    Moreover, GSH faces substantial additional costs to remedy the damage done to the Company by defendants' failure to abide by the rules and regulations and failure to establish and maintain internal controls and systems for compliance with said rules. Remedying this debacle, may require formal rescission of both the Units and Debenture Offerings and my result in private party claims against GSH.

216.   The GSH Board has taken no action against the person or persons responsible for the damage and injury to the Company, including themselves. By this action, plaintiffs seek redress for and vindication of GSH rights against its wayward fiduciaries.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

217.   Plaintiffs bring this action for the benefit of GSH to redress injuries suffered, and to be suffered, by GSH as a result of the defendants' violations of law, as well as the aiding and abetting thereof. Sands is named as a nominal party in this action.

218.   At all relevant times the Plaintiffs have continuously been GSH shareholders, and collectively own more than 40% of the total issued and outstanding common shares. Plaintiffs will adequately and fairly represent the interests of GSH in enforcing and prosecuting its rights.

219.   This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

220.   In accordance with Nev. Rev. Stat. § 41.520(2) and Nev. R. Civ. Proc. § 23.1, Plaintiff's made a good-faith demand upon the Board to address these matters and act accordingly. The Board refuses to respond, nor is it willing to take action as called for in said demand.

221.   A formal demand was submitted by regular mail, electronic mail, and Fed-Ex courier, to each of the board members.

222.   Notwithstanding no response from any of the Board member has been forthcoming.

223.   Said written, formal demand was dated and sent on June 12, 2017, to: 1111 Broadway, Suite 406 Denver, CO 80203.

224.    The Demand included the inspection of records and demand for a Special Meeting of Stockholders.

225.    The shareholders making said demand included the Plaintiff shareholders in this Complaint and a few other shareholders not otherwise named litigants.

226.    The chart below identifies said shareholders and the number of share they owned or controlled at the time the demand was made:

| SHAREHOLDER | No. Shares |
|---|---|
| RU Partners | 4,000,000 |
| LW Associates | 2,200,000 |
| Otis Fund | 1,250,000 |
| Christine Arenella | 2,200,000 |
| Jennifer Ciapetta | 2,200,000 |
| Sandy Phelps | 1,000,000 |
| JTW Grow Services | 615,000 |
| Joshua Wexler | 5,400,000 |
| Rose Wexler | 5,400,000 |
| James Loures, Jr. | 2,300,000 |

227.    These shareholders of record and beneficial holders of GSH common stock represent not less than 45% of the outstanding shares of the Company.

228.    Consistent with provisions of NRS Chapter 78 and the Bylaws of the Company and specifically, pursuant to Section 2 of NRS 78.105, they demanded the a reasonable opportunity to inspect the following records of the Company and to make copies or extracts therefrom:

    a.   A copy certified by the Secretary of State of Nevada of the articles of incorporation of the Company and all amendments thereto.

    b.   A copy certified by an officer of the Company of the Bylaws of the Company and all amendments thereto.

     c.  A stock ledger or a duplicate stock ledger, revised not later than 60 days after the date by which the most recent Annual List was required to be filed pursuant to NRS 78.150, containing the names, alphabetically arranged, of all persons who are stockholders of record of the Company, showing their places of residence, if known, and the number of shares held by them respectively.

229.    The demand to inspect records was also made to the registered agent of the Company pursuant to the provisions of Section 2 of NRS 78.105.

230.    The demand included duly executed and notarized verification(s) and power(s) of attorney signed by the stockholders (i) authorizing certain attorneys or other agents named therein to inspect the foregoing records on their behalf.

231.    Said demand also request the opportunity to review and inspect of financial records pursuant to NRS 78.257 including: the books of account of the Company; and all other financial records of the Company.

232.    Finally said demand included a request for an expedient Special Meeting of Stockholders pursuant to Section 2 of Article II of the Bylaws of the Company.

233.    These shareholders demanded that President of the Company call a special meeting of the stockholders of the Company for the purpose of electing the members of the Board of Directors of the Company. The demand further specifies:

> Such meeting should be held as promptly as practicable. Please advise Matthew Addison, Esq., of McDonald Carano, LLP, 100 W. Liberty Street, Tenth Floor, Reno, NV 89501 (telephone: (775) 788-2000; email: addison@mcdonaldcarano.com) not later than June 20,2017 as to the (i) record date for the meeting, and (ii) the time and place of the meeting. In the event the Company fails to timely respond promptly to this demand, the undersigned will consider pursuing other remedies available to them including, without limitation, applying for an order of the district court pursuant to NRS 78.345 for the election of directors in the manner required by NRS 78.330.

234.    The Demand as made by these shareholders specifically identifies the purpose and

issue of concern germane to the demand as follows:

> The undersigned are concerned that the failure by the Board to hold an annual
> meeting to elect directors since April 28, 2015 (the date of the merger with
> Grow Solutions, Inc.) has deprived the undersigned of one of the most
> fundamental rights associated with their stock ownership, the right to vote for
> the members of the Board of Directors. In the Grow Solutions transaction, the
> Company issued 44,005,000 shares of its common stock to the former
> stockholders of Grow Solutions. Since the date of the merger, the holders of
> these shares have never been accorded the right to vote for the members of the
> Board of Directors. In addition, because the Board of Directors is responsible
> for designating theofficers of the Company, and overseeing the affairs of the
> Company, the failure to hold an annual meeting of stockholders has enabled
> the entrenched Board to designate officers and to take other actions which the
> undersigned believe have not served the best interests of the Company and its
> stockholders. The Board's lack of accountability to the stockholders by failing
> to call an annual meeting since April 28, 2015 has therefore, in the view of the
> undersigned, constituted a significant breach of the fiduciary duties of the
> directors. In addition, the Company has failed to timely file, and has not filed
> prior to the date of this demand, its Annual Report on Form 10-K for the year
> ended December 31, 2016 and its Quarterly Report on Form 10-Q for the
> period ended March 31, 2017. This failure of the Company's Board and
> management to fulfill their obligations under the U.S. securities laws has
> therefore subjected the Company to potential liability and has deprived the
> Company's stockholders of critically important information regarding the
> business, operations and financial condition of the Company.

235.    However, making said demand on the GSH Board has been an exercise of futility.

236.    The Defendant Board Members ignored, consciously disregarded and/or were

reckless in failing to comply with state and federal securities laws.

237.    The Board failed to establish and maintain internal controls and systems at the

Company to ensure compliance.

238.    By failing to do so, defendants breached their fiduciary duties, and therefore, face a

substantial likelihood of liability to GSH for damages, which renders them unfit to

consider any demand that plaintiffs may have made.

239.    Defendants have demonstrated their unwillingness and/or inability to act in

compliance with their fiduciary obligations and/or to sue themselves and/or their

fellow directors and allies in the top ranks of the corporation for the violations of law

complained of herein.

**FIRST COUNT**
**Breach of Fiduciary Duty**
*Against All Board Member Defendants*

240.    Plaintiffs repeat and reallege each of the forgoing paragraphs as if set forth in full

herein.

241.    Each Board Member defendant owed to the Company the duty to exercise candor,

good faith and loyalty in the management and administration of GSH' business and

affairs particularly in the conduct of securities offerings (subject to rigorous regulatory

scrutiny and onerous sanctions penalties in the event the event of any violations

thereof) and in safeguarding the rights of shareholders.

242.    Despite this, these Defendants, in conjunction with no less than two private

placements involving the offer and sale of securities, approved and caused to be paid

surreptitious undisclosed commissions and pay-offs to fellow Board Member

defendants or their shills or strawmen including family members.

243.    These unlawful commissions, and the absence of adequate disclosure of same to

offerees, constitute no less than fraud in the offer or sale of securities in violation of

Section 17(a) of the Securities Act.

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

244.    The Board members, in the offer or sale of securities, employed devices, schemes, or artifices to defraud, obtained money or property by means of untrue statements or omissions, and engaged in transactions, practices, or courses of business which operated as a fraud or deceit, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

245.    Said conduct further constitutes an act, practice, or course of business which operated as a fraud or deceit in connection with the purchase or sale of securities and the distribution of unregistered securities without available exemption.

246.    These Defendants subjected GSH and its shareholders to considerable harm and detriment. GSH now faces the tangible likelihood of regulatory inquiry and sanctions, from a host of various state regulatory authorities including for example, Nevada's Securities Division as well as the U.S. Securities and Exchange Commission ("SEC") including the possibility of criminal sanction.

247.    GSH shareholders have been kept in the dark about the precise nature and scope of the Company's exposure to regulatory sanction and private-party civil liability for the Board's transgressions and the blatant self-dealing undertaken by these defendants resulting in their unjust enrichment.

248.    The Board, facing the prospect of termination and replacement, conspired with legal counsel for GSH to disenfranchise GSH shareholders by rendering impotent their voting shares.

249.    They gifted themselves these Super Shares without consideration or payment to GSH.

250. Their sole objective was to preserve their power and authority as the incumbent board without limitation.

251. No legitimate corporate objective exists for said issuance.

252. Moreover, pursuant to certain provisions as promulgated by Nevada's Revised Statutes ("NRS") including but not limited to NRS 78.265, the Board was obliged to proffer existing shareholders including Plaintiffs, preemptive rights, that is, an opportunity to acquire these Super Shares upon the very same terms the Board so generously fixed for its members and a fair and reasonable opportunity to exercise such rights.

253. The Board failed to do so.

254. The Board and each member thereof, thus breached their fiduciary duties.

255. Defendants' conduct set forth herein was not due to an honest error or misjudgment, but rather to their intentional breach or reckless disregard of the fiduciary duties they owed to the Company, as alleged herein. Defendants intentionally breached or recklessly disregarded their fiduciary duties to protect the rights and interests of GSH.

256. In breach of their fiduciary duties owed to GSH, defendants willfully participated in and caused the Company to waste its valuable assets and otherwise to expend unnecessarily its corporate funds and resources and failed to properly oversee GSH business, rendering each of them personally liable to the Company for breaching their respective fiduciary duties.

257. As a direct and proximate result of defendants' breaches of their fiduciary obligations. GSH has sustained and continues to sustain significant damages.

258.    As a result of the misconduct alleged herein, the Board defendants are liable to the

Company.

259.    As a result of Defendant(s)' actions, Plaintiffs have been damaged in an amount in

excess of $75,000.00.

260.    Defendants' breach of their respective duties of loyalty was oppressive, fraudulent,

and/or malicious.

261.    Plaintiffs are therefore entitled to punitive or exemplary damages.

262.    Plaintiffs have been required to retain the services of counsel to prosecute this

matter and, as such, are entitled to an award of their costs and attorney's fees incurred

herein.


**WHEREFORE**, the Plaintiffs demand judgment against the Defendant, on the First

Count for:

(a)    Compensatory damages;

(b)    Punitive damages

(b)    Cost of suit;

(c)    Attorneys fees;

(d)    For such other relief as the court may deem proper.

## SECOND COUNT
### Breach of Fiduciary Duty
*Against Defendants Lucosky And Lucosky Brookman*

263.    Plaintiffs repeat and reallege each of the forgoing paragraphs as if set forth in full

herein.

264. Defendants Lucosky And Lucosky Brookman are respectively, the attorney and law firm representing GSH. Each owed to the Company the duty to exercise candor, good faith and loyalty in advising GSH.

265. Despite this, these Defendants, aided and abetted and upon information and belief, advised and orchestrated the usurpation and disenfranchisement of GSH shareholders by rendering impotent their voting shares.

266. Their sole objective was to preserve the power and authority of the incumbent board without limitation.

267. No legitimate corporate objective exists for said issuance.

268. Moreover, pursuant to certain provisions as promulgated by Nevada's Revised Statutes ("NRS") including but not limited to NRS 78.265, the Board was obliged to proffer existing shareholders including Plaintiffs, preemptive rights, that is, an opportunity to acquire these Super Shares upon the very same terms the Board so generously fixed for its members and a fair and reasonable opportunity to exercise such rights. The Board failed to do so and Defendants Lucosky And Lucosky Brookman failed to advise the Board accordingly.

269. These defendants thus breached their fiduciary duties.

270. Defendants Lucosky And Lucosky Brookman's conduct set forth herein was not due to an honest error or misjudgment, but rather to their intentional breach or reckless disregard of the fiduciary duties they owed to the Company, as alleged herein. These Defendants intentionally breached or recklessly disregarded their fiduciary duties to protect the rights and interests of GSH as corporate counsel.

271.   In breach of their fiduciary duties owed to GSH, these defendants  willfully participated in and caused the Company to waste its valuable assets and otherwise to expend unnecessarily its corporate funds and resources and failed to properly oversee GSH business, rendering each of them personally liable to the Company for breaching their respective fiduciary duties.

272.   As a direct and proximate result of these defendants' breaches of their fiduciary obligations. GSH has sustained and continues to sustain significant damages.

273.   As a result of the misconduct alleged herein, Defendants Lucosky And and Brookman are liable to the Company.

274.   As a result of Defendant(s)' actions, Plaintiffs have been damaged in an amount in excess of $75,000.00.

275.   Defendants' breach of their respective duties of loyalty was oppressive, fraudulent, and/or malicious.

276.   Plaintiffs are therefore entitled to punitive or exemplary damages.

277.   Plaintiffs have been required to retain the services of counsel to prosecute this matter and, as such, are entitled to an award of their costs and attorney's fees incurred herein.

**WHEREFORE**, the Plaintiffs demand judgment against the Defendant, on the Second Count for:

(c)   Compensatory damages;

(d)   Punitive damages

(b)   Cost of suit;

(c)   Attorneys fees;

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

(d)     For such other relief as the court may deem proper.

## THIRD COUNT
### Breach of Duty of Care
*Against All Board Member Defendants*

278.    Plaintiffs repeat and reallege each of the forgoing paragraphs as if set forth in full
herein.

279.    The Board Member Defendants had a duty of care with respect to their respective
duties to Plaintiffs.

280.    Defendants breached their duties to Plaintiffs by failing to exercise reasonable care
with respect to said duties.

281.    As a result of Defendant(s)' actions, Plaintiffs have been damaged in an amount in
excess of $75,000.00.

282.    Defendants' breach of their respective duties of loyalty was oppressive, fraudulent,
and/or malicious.

283.    Plaintiffs are therefore entitled to punitive or exemplary damages.

284.    Plaintiffs have been required to retain the services of counsel to prosecute this
matter and, as such, are entitled to an award of their costs and attorney's fees incurred
herein.

285.    Defendants have a duty of loyalty with respect to their duties to Plaintiffs.

286.    Defendants breached their duties to Plaintiffs by failing to exercise a reasonable
degree of loyalty with respect to said duties.

287.   As a result of Defendants' actions, Plaintiffs have been damaged in an amount in excess of $25,000.00.

288.   Defendants' breach of their respective duties of loyalty was oppressive, fraudulent, and/or malicious.

289.   Plaintiffs are therefore entitled to punitive or exemplary damages.

290.   Plaintiffs have been required to retain the services of counsel to prosecute this matter and, as such, are entitled to an award of their costs and attorney's fees incurred herein.

**WHEREFORE**, the Plaintiffs demand judgment against the Defendant, on the Third Count for:

(e)   Compensatory damages;

(f)   Punitive damages

(b)   Cost of suit;

(c)   Attorneys fees;

(d)   For such other relief as the court may deem proper.

**FOURTH COUNT**
**Abuse of Control**
*Against All Defendants*

291.   Plaintiffs repeat and reallege each of the forgoing paragraphs as if set forth in full herein.

292.   Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence GSH, for which they are legally responsible.

293.    As a direct and proximate result of defendants' abuse of control, Sands has sustained significant damages.

294.    As a direct and proximate result of defendants' breaches of their fiduciary obligations of candor, good faith and loyalty, Sands has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, defendants are liable to the Company.


**WHEREFORE**, the Plaintiffs demand judgment against the Defendant, on the Fourth Count for:

(g)    Compensatory damages;

(h)    Punitive damages

(b)    Cost of suit;

(c)    Attorneys fees;

(d)    For such other relief as the court may deem proper.


## FIFTH COUNT
### Waste of Corporate Assets
*Against All Defendants*


295.    Plaintiffs repeat and reallege each of the forgoing paragraphs as if set forth in full herein.

296.    As a result of the foregoing misconduct, defendants have caused Sands to waste valuable corporate assets.

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

297.    As a direct and proximate result of defendants' breaches of their fiduciary

obligations of candor, good faith and loyalty, Sands has sustained and continues to

sustain significant damages. As a result of the misconduct alleged herein, defendants

are liable to the Company.

**WHEREFORE**, the Plaintiffs demand judgment against the Defendant, on the Fifth

Count for:

(i)      Compensatory damages;

(j)      Punitive damages

(b)      Cost of suit;

(c)      Attorneys fees;

(d)      For such other relief as the court may deem proper.

## SIXTH COUNT
### Conspiracy
*Against All Defendants*

298.    Plaintiffs repeat and reallege each of the forgoing paragraphs as if set forth in full

herein.

299.    Defendants, by acting in concert, intended to accomplish an unlawful objective for

the purpose of harming plaintiffs; and As a direct and proximate result of the

defendants' actions, the Company sustained damages resulting from defendants' acts.

THE TRAUTMANN FIRM
50 U.S. Highway 9 North,
Building 3
Morganville, NJ 07751
(908) 770-4915

**WHEREFORE**, the Plaintiffs demand judgment against the Defendant, on the Sixth Count for:

(k)    Compensatory damages;

(l)    Punitive damages

(b)    Cost of suit;

(c)    Attorneys fees;

(d)    For such other relief as the court may deem proper.

## <u>JURY DEMAND</u>

The Plaintiffs hereby demands a trial by jury as to all issues in the above matter.

Date:  March 14, 2019

By:  /s/ Robert T. Trautmann
      Robert T. Trautmann, Esq. (037562005)
      THE TRAUTMANN FIRM
      50 U.S. Highway 9 North, Building 3
      Morganville, NJ 07751
      (908) 770-4915
      Attorney for Plaintiffs